IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**SANDRA J. BERRIOS,**

    **Plaintiff**

                                CIVIL ACTION NO. 1:11-cv-01130-AJT

v.

**EXPERIAN INFORMATION SOLUTIONS, INC.**
**TRANS UNION, LLC, EQUIFAX**
**INFORMATION SERVICES, INC. and**
**FLAGSTAR BANK, FSB,**

    **Defendants.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

COMES NOW the Plaintiff, by counsel, and for her Memorandum in Opposition to a Motion for Protective Order (Docket No. 54) filed Defendant, Flagstar Bank, FSB, ("Flagstar" or "Defendant"). Despite Plaintiff's requests for dates and locations to coordinate party-witness depositions, Flagstar has refused to cooperate in setting the depositions has interposed improper objections to Plaintiff's notices. Plaintiff seeks denial of Defendant's Motion for Protective Order and an order compelling the Defendant's compliance.

### BACKGROUND

This case arises because Flagstar refused to correct its inaccurate reporting that the Plaintiff, Sandra Berrios ("Ms. Berrios"), had defaulted on her mortgage with Flagstar. Ms. Berrios had never missed a mortgage payment. Ms. Berrios obtained a loan modification through the litigation of a mortgage fraud case against the Defendant in September, 2009. Almost immediately after agreeing to the modification, the Defendant failed to honor the terms therein

1

and have reported Ms. Berrios as delinquent in her mortgage payments and placed her home in foreclosure. The Defendant failed to respond to multiple qualified written requests to the Defendant to investigate the alleged dispute. Despite disputing this fact directly to Flagstar, then through the consumer reporting agencies, Flagstar continued to falsely report just about the worst thing that could appear on a consumer's report: a defaulted mortgage. Ms. Berrios prosecutes this action under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681, *et seq*. and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2601, *et seq*. More specifically, the Plaintiff alleges that Defendant violated 1681s-2(b) in failing to conduct a complete and meaningful investigation of her multiple disputes over a number of years regarding its failure to honor her loan modification agreement. Not only did the Defendant refuse to correct the inaccurate information regarding the mortgage and kept reporting it as in default, it also failed in its obligation to respond to her multiple qualified written requests regarding this very issue.

## **PROCEDURAL HISTORY**

Flagstar has completely omitted from its motion critical information that the Plaintiff has sought cooperation in scheduling depositions with Flagstar. Instead of proceeding in a fashion consistent with its agreement pursuant to a meet and confer between counsel on February 9, 2012, Flagstar has filed the present motion knowing that it has failed to substantively confer regarding the depositions in question. If it had, Flagstar would have learned, for instance, that Plaintiff would readily agree to deposing party-witnesses where they reside at within a reasonable time convenient to the witnesses.

Plaintiff has sought Flagstar's cooperation in order to schedule the depositions of Flagstar's employees who actually handled Ms. Berrios' loan under Fed. R. Civ. P. 30(b)(1) as well as Flagstar's corporate designee under Fed. R. Civ. P. 30(b)(6). Flagstar provided no dates

2

whatsoever. Until the filing of its motion for protective order, it had not even supplied the names or locations of the employees who actually handled Ms. Berrios' loan and consumer reporting disputes in this case. In the meet and confer process, Flagstar only objected to the fact that a Rule 30(b)(6) deposition would be a lot of work and its incorrect legal position that its employees weren't party witnesses under Fed. R. Civ. P. 30(b)(1). It is simply not true that the Plaintiff refused to take the depositions of Flagstar's employees in Michigan. (Def.'s Mem. Supp. Motion for Protective Order at 4).

In relation to the conduct of discovery in this case, attorneys for Ms. Berrios and for Flagstar communicated by phone and email:

- Ms. Berrios' attorney, Mr. Bennett, attempted to call Mr. Kostel to arrange a meet and confer;
- On February 3rd, Mr. Bennett sent Mr. Kostel an email requesting a "return call or joinder in a Rule 37 meet and confer process." A true and accurate copy of this correspondence is attached hereto as Exhibit 5;
- Mr. Kostel responded and a telephone call was scheduled for February 6th;
- Due to unforeseen medical issues, Mr. Bennett was unable to make the scheduled call on February 6th. He sent Mr. Kostel an email requesting he speak with alternate counsel, Ms. Kelly on February 7th. A true and accurate copy of this correspondence is attached hereto as Exhibit 6;
- Ms. Kelly called Mr. Kostel on February 7th and left a voice message;
- Mr. Kostel sent correspondence to Ms. Kelly and Mr. Bennett on February 7th seeking a protective order and agreeing to respond to certain Requests and Interrogatories. A true and accurate copy of this correspondence is attached hereto as Exhibit 7;

- Ms. Kelly followed up on her voice message with an email to Mr. Kostel on February 7th requesting to reschedule the meet and confer telephone call. A true and accurate copy of this correspondence is attached hereto as Exhibit 8;

- On February 8th, Mr. Kostel sent correspondence to Ms. Kelly and Mr. Bennett regarding Ms. Berrios' 30(b)(1) and 30(b)(6) deposition notices. A true and accurate copy of this correspondence is attached hereto as Exhibit 9;

- On February 8th, Mr. Bennett responded to Mr. Kostel's correspondence regarding the depositions. In his correspondence, he specifically indicated that he was willing to work with the Defendant on location and dates, provided he suggest alternative dates that were not much more delayed. A true and accurate copy of this correspondence is attached hereto as Exhibit 9;

- Mr. Kostel and Ms. Kelly scheduled a meet and confer regarding the Defendant's discovery responses for February 9th at 9 a.m.;

- Mr. Kostel and Ms. Kelly conferred on Defendant's discovery responses. Defendant agreed to produce supplemental Interrogatory answers and additional documents responsive to the Requests on February 10th. Mr. Kostel and Ms. Kelly agreed to each send proposed protective orders to one another for review. Ms. Kelly narrowed the scope of some of the Interrogatories Nos. 17 and 19 and Requests Nos. 20 and 28. Ms. Kelly withdrew Requests No. 27. Counsel also spoke briefly about Ms. Berrios' outstanding depositions notices. Ms. Kelly reiterated Mr. Bennett's prior email that dates and location were not an issue. However, since Mr. Bennett was going to take the depositions, Ms. Kelly advised Mr. Kostel to direct any issues with the topics for the 30(b)(6) witness to Mr. Bennett;

4

- On February 9th, Ms. Kelly sent Mr. Kostel a proposed protective order and proposed order memorializing their discovery agreement. In the order, Ms. Kelly was willing to provide the Defendant an enlargement to respond to discovery if he would agree to consent to the order. A true and accurate copy of this correspondence is attached hereto as Exhibit 10;
- Mr. Kostel sent Ms. Kelly correspondence at 4 p.m. on February 10th, indicating the requested documents would be produced that day and Interrogatory answers would be sent on February 13th. Mr. Kostel declined to sign the consent order, absent a motion;
- On February 10th, additional documents were delivered to Ms. Kelly's office. However, the majority of the documentation consisted of a Consumer Data Industry Association (CDIA) training manual. There was no correspondence between the parties, no database printouts or screenshots, etc. Defendant also withheld additional documentation on an updated privilege log;
- Ms. Kelly did not receive any Interrogatory answers on February 13th;
- On February 14th, Ms. Kelly received correspondence from Mr. Kostel's paralegal indicating he was sending over additional responsive documents. The correspondence further indicated Interrogatory responses would be delayed until February 15th. A true and accurate copy of this correspondence is attached hereto as Exhibit 11;
- In response to this letter, Ms. Kelly sent correspondence to Mr. Kostel requesting complete answers to Interrogatories and production of responsive documents no later than noon on February 15th. A true and accurate copy of this correspondence is attached hereto as Exhibit 12;

- As of the filing of this motion, Ms. Kelly has not received a response to her correspondence.

Despite Defendant's repeated assurances that it will cooperate with its discovery obligations, it has failed to produce answers to Interrogatories and documents responsive to Ms. Berrios' Requests. Instead of complying with its discovery requirements under Fed. R. Civ. P. Rules 30, 33 and 34, or seeking to work with Ms. Berrios on dates for the depositions, Defendant has spent its time filing affirmative motions seeking a Protective Order (Docket # 53) from the depositions and for Partial Judgment on the Pleadings (Docket # 56).

**ARGUMENT**

The standard for granting a protective order is a rigorous one for which the movant bears the burden. *Big Ernie's, Inc. v. United States*, 1:09-CV00122(LO/IDD), 2009 WL 3166839 (E.D. Va. Aug. 13, 2009)(citing *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C.1987) and applying the standard that a "protective order pursuant to Rule 26(c), however, "'should be sparingly used and cautiously granted.'"). The burden of showing that the employees are managing agents of Flagstar rests with the Plaintiff, but the burden is a light one and Plaintiff has met it. In this case, Flagstar has completely failed to carry its burden and thus its protective order must be denied. *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996)(holding that "whether an individual qualifies as a 'managing agent' of a corporation must be made at the time of the deposition. *See, e.g., Curry v. States Marine Corp. of Del.*, 16 F.R.D. 376, 377 (S.D.N.Y.1954). While the burden of proof rests on the party seeking discovery, doubt about an individual's status as a 'managing agent,' at the pre-trial discovery stage, are resolved in favor of the examining party.")

1. **Defendants' employees are party witnesses.**

It is firmly established that employees are party-witnesses. *Lycos, Inc. v. TiVo, Inc.,* 499 F. Supp. 2d 685, 694 (E.D. Va. 2007)(citing *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F.Supp.2d 708, 717 (E.D.Va. 2005) in deciding a venue motion, the court stated "the fact remains that employees of Lycos who have knowledge relevant to this action are located in Massachusetts. As these are party-witnesses, and it is not clear whether their credibility will be an important issue, the court declines to give substantial weight to the fact that it would be more convenient for them to testify in Massachusetts than in Virginia."). A party witness is a party itself "those closely aligned with a party." *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F.Supp.2d at 718. A non-party witness is not a party not closely aligned with a party, but an individual who may have knowledge of a material fact relevant to a claim or defense. *Id.* A party's employee, as a matter of law, closely aligned with and under the direction of a party. *Id.* There is no reason to treat the employees of the Defendants in this case differently. *See also, Wilkes v. GMAC,* Civ. No. 1:10cv1160 CMH-TRJ (E.D.Va. June 1, 2011)(granting Plaintiff's Motion to Clarify that GMAC's low-level employees were party witnesses).

**2.    Defendant's employees are fact witnesses properly considered managing agents for purposes of Rule 30(b)(1).**

In the Fed. R. Civ. P. 30(b)(1) context, the employees in this case process the Automated Consumer Dispute Verification requests, or ACDVs. Any doubt about whether the party witness is a managing agent is resolved in favor of the Plaintiff at this stage. *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.,* 168 F.R.D. at 540. The ACDV operators are managing agents in under Fed. R. Civ. P. 30(b)(1) because they closely align themselves with the interest of the employer, which is the paramount question to resolve in determining whether an employee-witness is covered by the standards of Fed. R. Civ. P. 30(b)(1). *E.I. DuPont de Nemours & Co. v.*

7

*Kolon Indus., Inc.*, 268 F.R.D. 45, 49 (E.D. Va. 2010)(reasoning that "courts are generally agreed, however, on the controlling factors used in deciding whether an individual is a managing agent of a corporation. These factors include: (1) whether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the adverse party."). The term "'managing agents' should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority * * * respecting the subject matter of the litigation.'" *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968)(quoting *Kolb v. A. H. Bull Steamship Co.*, 31 F.R.D. 252, 254 (E.D.N.Y.1962)).

In this case, while the burden is on the Plaintiff to demonstrate that the Flagstar ACDV operators side with the defendant in this case, Flagstar has produced no evidence that its employees do not identify themselves with the interests of their employers, that they would not carry out Flagstar's directions or otherwise would fail to exercise discretion and judgment when handling the disputes of consumers in one of the most important personal financial transactions any consumer will ever make: obligating oneself on a mortgage. These ACDV operators by virtue of their jobs are expected to identify with the employer, they are not independent investigators who represent consumers in the dispute process, and thus they are subject to deposition by notice under Fed. R. Civ. P. 30(b)(1). *Felman Prod., Inc. v. Indus. Risk Insurers*, 3:09-CV-00481, 2010 WL 5110076 (S.D.W. Va. Dec. 9, 2010)(reviewing leading cases and finding them remarkably consistent).

There is no serious way that Flagstar can demonstrate that the ACDV operators are other than closely aligned with their employer. ACDV operators are *the* Flagstar employees who are in charge of investigating consumer disputes, following the training and guidance in Flagstar's procedures and policies for processing consumer disputes. They are witness to the most relevant questions in this case: whether the investigation of the Plaintiff's dispute was reasonable. *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. at 96-97. In *Tomingas*, the court found that two engineers sent to investigate an accident were managing agents for several reasons, including that they were the sole representatives to investigate the wreckage, they were expected to be closely aligned with the interest of their employer and could be expected to follow the direction of their employer. *Id*. The court explained that the engineers were managing agents for the purpose of Rule 30(b)(1) for the purpose of giving testimony about the investigation, which was "a most relevant question" in the case. *Id*. Like the engineers in *Tomingas*, the ACDV operators in this case are proper witnesses under Rule 30(b)(1) precisely because are able to give testimony regarding "a most relevant question" in the case. The court also held that its finding was not free from doubt, but where doubt existed it should be resolved in favor of the non-movant. *Id*.

The Defendant's bald assertion that the ACDV operators are not managing agents absent any facts or analysis is insufficient to resolve the protective order in its favor. It is doubtful that Flagstar would allow Plaintiff's counsel to contact its employees or that it would allow them to be deposed without representation. Furthermore, as a matter of practicality, under Fed. R. Civ. P. 37(c)(1), if Flagstar refuses to disclose its employees under Fed. R. Civ. P. 26(a)(1) and refuses to produce them for deposition, then they will be barred from introducing evidence of the reasonableness of any investigation conducted by them consistent with the FCRA. The analysis and case law all point to one conclusion, the ACDV operators are not only party-witnesses, but

9

also managing agents subject deposition by notice under Fed. R. Civ. P. 30(b)(1) and not Fed. R. Civ. P. 45.

3. **The topics in the Fed. R. Civ. P. 30(b)(6) notice are not only proper, but battle-tested in this court.**

Flagstar complains that the topics in the Fed. R. Civ. P. 30(b)(6) notice are overbroad but has failed to carry its burden to demonstrate the reasons that such objections cannot be cured with a meaningful meet and confer. When Plaintiff and Flagstar's counsel met and conferred concerning the discovery disputes, Ms. Kelly specifically told Mr. Kostel he would have to speak to Mr. Bennett (who is scheduled to depose the 30(b)(6) witness) to narrow the topics. In almost every case, Plaintiff's counsel is able to trim the topics through a series of stipulations. However, in this case, the Defendant has not identified one topic that is not proper for a corporate designee to testify about or that is not germane to the elements of the § 1681s-2(b) claim.

In an FCRA claim, there are four elements that are to be litigated: (1.) Accuracy – whether the disputed information reported by Wells Fargo to the CRAs was accurate and complete; (2.) Liability – whether Wachovia violated the FCRA, 15 U.S.C. 1681s-2(b) by the manner in which it conducted the required investigations or responded back to the CRAs after each dispute; (3.) Willfulness (Recklessness) – whether Wells Fargo intended its conduct or recklessly permitted the conduct; and (4.) Damages – once liability is established, determining the Plaintiff's unliquidated and liquidated actual damages and if the violation was also willful, this includes the appropriate amount of punitive damages. Plaintiff's topics focus on liability, willfulness and punitive damages.

In order to defeat the Plaintiff's legitimate areas of inquiry as unduly burdensome or overbroad, Flagstar must do so with specificity. *Capetta v. GC Servs. Ltd. P'ship*, 3:08CV288, 2008 WL 5377934, at * 2 (E.D.Va. Dec. 24, 2008). This it has not done, it has simply and without citation to any case on point asserted that the areas of inquiry should be limited to the Plaintiff's specific account, ignoring entirely the large body of FCRA law that specifically holds that issues such as other litigation, compliance procedures and credit reporting policies are relevant, admissible and discoverable. *See Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004); *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008); *Cushman v. Trans Union*, 115 F.3d 220 (3rd Cir. 1997) ("TUC's investigations are performed by clerks paid $7.50 per hour and who are expected to perform ten investigations per hour. […] [T]he jury could have concluded that seventy-five cents per investigation was too little to spend when weighed against Cushman's damages."); *DiPrinzio v. MBNA America Bank*, N.A., 2005 WL 2039175, *10 (E.D.Pa. 2005) ("[A] jury exposed to information regarding the average processing time could improperly believe that MBNA's investigations of the particular disputes relating to plaintiff were conducted in the same amount of time. […] [T]he information is directly relevant under 15 U.S.C. § 1681s-2(b)(1), which states that a creditor must conduct a investigation of a consumer's disputes."); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) (applying conventional agency principals to FCRA impermissible pull case); *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir 2008) (Experian unreasonably relied on third party vendor to perform its investigation of public records inaccuracy); 30 C.J.S. Employer—Employee § 205 ("[a]n employer is liable for negligence in failing properly to instruct employees, or failing to assure that the instructions are obeyed.")

In addition to the evidence to be presented to meet the negligence threshold, Plaintiff may

11

also present evidence that procedures were deliberately or recklessly adopted and followed despite established law barring such procedures and conduct. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007); *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009). In *Levine*, the Eleventh Circuit actually just restated the Supreme Court's *Safeco* standard. *Id*. It has been held that the Safeco standard actually reduces the Plaintiff's willfulness burden:

> *Safeco* changed the standard previously applied in the Fifth Circuit, pursuant to which a defendant could have been found in willful noncompliance under § 1692n only if it " 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' " *Stevenson v. TRW Inc.,* 987 F.2d 288, 293-94 (5th Cir.1993) (quoting *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), cert. denied, 483 U.S. 1022 (1987)); *see also Harris v. Equifax Info. Servs., LLC,* No. C A 606CV-01810-GRA, 2007 WL 1862826, at *2 (D.S.C. June 26, 2007) ("In Safeco, the Supreme Court unequivocally resolved this circuit split, holding that willfulness under 15 U.S.C. § 1681n(a) covers a violation committed in reckless disregard of Plaintiff's rights.").

*Robertson v. J.C. Penney Co., Inc.*, No. 2:06CV3-KS-MTP, 2008 WL 623397, at *9 (S.D. Miss. Mar. 4, 2008).

## CONCLUSION

For these reasons, the Plaintiff respectfully requests the court deny the Defendant's motion for protective order, deny its request to quash, and compel compliance with the discovery and deposition notices in this case.

Respectfully Submitted,

Sandra Berrios

_____/s/_____
Susan Rotkis, Esq. VSB #40639
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone

(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com

Kristi Cahoon Kelly, VSB #72791
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400
(703) 591-9285
E-mail:  kkelly@siplfirm.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been filed in the CM/ECF system, which shall electronically forward it to the following on this the 15th day of February, 2012, as follows:

George E. Kostel
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., NW Suite 900
Washington, D.C. 20001

　　　　　　／s／
Susan M. Rotkis, VSB # 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd, Suite 1-A
Newport News, VA  23601