**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**SANDRA J. BERRIOS,**

        **Plaintiff**

                              **CIVIL ACTION NO. 1:11-cv-01130**

**v.**

**EXPERIAN INFORMATION SOLUTIONS, INC.**
**TRANS UNION, LLC, EQUIFAX**
**INFORMATION SERVICES, INC. and**
**FLAGSTAR BANK, FSB,**


        **Defendants.**

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37

COMES NOW the Plaintiff, by counsel, and for her Memorandum in Support of Plaintiff's Motion to Compel and for Sanctions, he states that Defendant, Flagstar Bank, FSB, ("Flagstar" or "Defendant") has interposed improper objections to Plaintiff's discovery and has refused to produce documents and answer interrogatories even after meeting and conferring about narrowing the area of disagreement. Plaintiff seeks to compel Defendant's compliance with discovery or obtain sanctions under Fed. R. Civ. P. 37 as appropriate.

## BACKGROUND

This case arises because Flagstar refused to correct its inaccurate reporting that the Plaintiff, Sandra Berrios ("Ms. Berrios"), had defaulted on her mortgage with Flagstar. Ms. Berrios had never missed a mortgage payment. Ms. Berrios obtained a loan modification through the litigation of a mortgage fraud case against the Defendant in September, 2009. Almost

1

immediately after agreeing to the modification, the Defendant failed to honor the terms therein and reported Ms. Berrios as delinquent in her mortgage payments and placed her home in foreclosure. Further, the Defendant has also failed to respond to multiple qualified written requests to the Defendant to investigate the alleged dispute. Despite disputing this fact directly to Flagstar, then through the consumer reporting agencies, Flagstar continued to falsely report just about the worst thing that could appear on a consumer's report:  a defaulted mortgage.  Ms. Berrios prosecutes this action under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681, *et seq.* and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2601, *et seq.* More specifically, the Ms. Berrios alleges that Defendant violated 1681s-2(b) in failing to conduct a complete and meaningful investigation of her multiple disputes over a number of years regarding its failure to honor her loan modification agreement.  Not only did the Defendant refuse to correct the inaccurate information regarding the mortgage and kept reporting it as in default, it also failed in its obligation to respond to her multiple qualified written requests regarding this very issue.

Under RESPA, Ms. Berrios has cause of action pursuant to 12 U.S.C. 2605(f). Pursuant to Section 2605(e), Ms. Berrios sent documentation to Flagstar indicating that she had been paying in accordance with a loan modification and disputing any delinquency on her account, including the assessment of late charges and other default fees. She asked that they remove the delinquency and investigate her claims. Flagstar did not 1) make any corrections to the account, 2) conduct any investigation to her claims, 3) provide Ms. Berrios any written explanation regarding her request and 4) cease its delinquent credit reporting during her dispute, despite their obligations under Section 2605(e)(2) and (3).

There are three primary claims available to a consumer under the FCRA when inaccurate

information is published about her.   The first two causes of action arise under 15 U.S.C. §1681e(b) and 15 U.S.C. §1681i and only apply to "consumer reporting agencies" (CRAs), most commonly Equifax, Experian and Trans Union.   Section 1681e(b) requires that when a CRA prepares and furnishes a consumer report, it use "reasonable procedures to assure maximum possible accuracy." Section 1681i applies when a consumer makes a direct dispute to the CRA. The section includes a number of requirements and prohibitions that require the CRA to forward the dispute to its subscriber-furnisher, such as the Defendant in this case.

The third type of FCRA claim applies to furnishers such as Flagstar, and is codified at 15 U.S.C. §1681s-2(b). In 1996 Congress amended the FCRA to add §1681s-2, imposing on "furnishers of information" to credit bureaus detailed and specific responsibilities, including the consumer dispute procedures stated in subsection (b). A simplified summary is that 1681s-2(a) contains substantive and procedural requirements limiting how a creditor may report a debt to the credit bureaus.   However §§1681s-2(c) and (d) do not provide any private cause of action for such violations.   That leaves §1681s-2(b) as the consumer's principal remedy against a creditor's inaccurate reporting.   This subsection applies only when a consumer makes a dispute through the credit bureaus and requires the creditor to conduct a "reasonable investigation" and to accurately report the results of that investigation back to the bureaus[1].   Ms. Berrios alleges that the Defendant violated both of these requirements.

## PROCEDURAL HISTORY

---

[1] Each of these two §1681s-2(b) claims has now been tried to a jury and subject to favorable reported decisions affirming the verdicts in the United States District Court for the Eastern District of Virginia, Richmond Division.   *See Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004); *Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

Ms. Berrios propounded Interrogatories and Requests for Production of Documents ("Requests") on the Defendant on December 21, 2011, via electronic and regular mail. Ms. Berrios received Defendant's General and Specific Objections to her Interrogatories and Requests on January 9, 2012. Attached hereto as Exhibit 1 and 2 are a true and accurate copy of Defendant's General and Specific Objections to Ms. Berrios' Interrogatories and Requests. On January 23, 2012, Defendant produced its Answers to Interrogatories and Responses to Ms. Berrios' Requests. Attached hereto as Exhibit 3 and 4 are a true and accurate copy of Defendant's  Responses and Supplemental Responses to Interrogatories and Responses to Requests. The documents that were initially produced merely consisted largely of Ms. Berrios' loan origination file and the settlement agreement from the prior lawsuit. Defendant has subsequently supplemented production to produce correspondence between the parties, two manuals, and credit reporting documentation as it pertains to Ms. Berrios. There are still no database printouts or screen shots or documents relevant to the reasonableness of Defendant's investigation into Ms. Berrios' credit dispute and the willfulness of Defendant's conduct. Further, the Defendant only answered a few Interrogatories and has largely referred Ms. Berrios to documents to ascertain the remainder of Defendant's position.

Parties have been working diligently to resolve and narrow the disputes before the court. Upon receipt of the discovery, the following communications occurred:

- Mr. Bennett attempted to call Mr. Kostel to arrange a meet and confer;
- On February 3rd, Mr. Bennett sent Mr. Kostel an email requesting a "return call or joinder in a Rule 37 meet and confer process." A true and accurate copy of this correspondence is attached hereto as Exhibit 5;
- Mr. Kostel responded and a telephone call was scheduled for February 6th;

4

- Due to unforeseen medical issues, Mr. Bennett was unable to make the scheduled call on February 6th. He sent Mr. Kostel an email requesting he speak with alternate counsel, Ms. Kelly on February 7th. A true and accurate copy of this correspondence is attached hereto as Exhibit 6;

- Ms. Kelly called Mr. Kostel on February 7th and left a voice message;

- Mr. Kostel sent correspondence to Ms. Kelly and Mr. Bennett on February 7th seeking a protective order and agreeing to respond to certain Requests and Interrogatories. A true and accurate copy of this correspondence is attached hereto as Exhibit 7;

- Ms. Kelly followed up on her voice message with an email to Mr. Kostel on February 7th requesting to reschedule the meet and confer telephone call. A true and accurate copy of this correspondence is attached hereto as Exhibit 8;

- On February 8th, Mr. Kostel sent correspondence to Ms. Kelly and Mr. Bennett regarding Ms. Berrios' 30(b)(1) and 30(b)(6) deposition notices. A true and accurate copy of this correspondence is attached hereto as Exhibit 9;

- On February 8th, Mr. Bennett responded to Mr. Kostel's correspondence regarding the depositions. In his correspondence, he specifically indicated that he was willing to work with the Defendant on location and dates, provided he suggest alternative dates that were not much more delayed. A true and accurate copy of this correspondence is attached hereto as Exhibit 10;

- Mr. Kostel and Ms. Kelly scheduled a meet and confer regarding the Defendant's discovery responses for February 9th at 9 a.m.;

- Mr. Kostel and Ms. Kelly conferred on Defendant's discovery responses. Defendant agreed to produce supplemental Interrogatory answers and additional documents

responsive to the Requests on February 10th. Mr. Kostel and Ms. Kelly agreed to each send proposed protective orders to one another for review. Ms. Kelly narrowed the scope of some of the Interrogatories Nos. 17 and 19 and Requests Nos. 20 and 28. Ms. Kelly withdrew Requests No. 27. Counsel also spoke briefly about Ms. Berrios' outstanding depositions notices. Ms. Kelly reiterated Mr. Bennett's prior email that dates and location were not an issue. However, since Mr. Bennett was going to take the depositions, Ms. Kelly advised Mr. Kostel to direct any issues with the topics for the 30(b)(6) witness to Mr. Bennett;

- On February 9th, Ms. Kelly sent Mr. Kostel a proposed protective order and proposed order memorializing their discovery agreement. In the order, Ms. Kelly was willing to provide the Defendant an enlargement to respond to discovery if he would agree to consent to the order. A true and accurate copy of this correspondence is attached hereto as Exhibit 11;

- Mr. Kostel sent Ms. Kelly correspondence at 4 p.m. on February 10th, indicating the requested documents would be produced that day and Interrogatory answers would be sent on February 13th. Mr. Kostel declined to sign the consent order, absent a motion;

- On February 10th, additional documents were delivered to Ms. Kelly's office. However, the majority of the documentation consisted of a Consumer Data Industry Association (CDIA) training manual and an internal manual. There was no correspondence between the parties, no database printouts or screenshots, etc. Defendant also withheld additional documentation on an updated privilege log;

- Ms. Kelly did not receive any Interrogatory answers on February 13th;

- On February 14th, Ms. Kelly received correspondence from Mr. Kostel's paralegal indicating he was sending over additional responsive documents. The correspondence further indicated Interrogatory responses would be delayed until February 15th. A true and accurate copy of this correspondence is attached hereto as Exhibit 12;

- In response to this letter, Ms. Kelly sent correspondence to Mr. Kostel requesting complete answers to Interrogatories and production of responsive documents no later than noon on February 15th. A true and accurate copy of this correspondence is attached hereto as Exhibit 13;

- On February 15th, Mr. Kostel responded to Ms. Kelly correspondence without supplementing the interrogatories or document requests. Both counsels agreed to a meet and confer on February 16th to discuss the remaining issues. During this phone call, Mr. Kostel agreed to withdraw his general objections to the Interrogatories and Requests. A true and accurate copy of this correspondence is attached hereto as Exhibit 14;

- Prior to the meet and confer, Ms. Kelly e-mailed Mr. Kostel requesting him to withdraw his general and specific objections or to limit their scope so she could ascertain whether documents were not being produced. A true and accurate copy of this correspondence is attached hereto as Exhibit 15;

- Mr. Kostel's response to this e-mail requested that Ms. Kelly provide him a list of documents that she believed were not in the production.

- Ms. Kelly responded to this e-mail stating her concern that she wanted Mr. Kostel to withdraw his specific objections so that she could ascertain whether Flagstar was giving a complete response to the interrogatories and document requests. Ms. Kelly

also confirmed their agreement to withdraw and narrow certain Interrogatories and
Requests. A true and accurate copy of this correspondence is attached hereto as
Exhibit 16;

• Ms. Kelly called Mr. Kostel at noon to resolve the disputes. During this conversation,
Mr. Kostel indicated that he would not withdraw his specific objections to the
interrogatories or document requests because some of the requests lack a timeframe.
Ms. Kelly offered to stipulate to a timeframe, but Mr. Kostel suggested that she re-
send her requests.

• As of the filing of this motion, Defendant has not produced sufficient answer to the
Interrogatories or document Requests.

Despite Defendant's repeated overtures indicating otherwise, it has failed to produce
answers to all Interrogatories and documents responsive to Ms. Berrios' Requests. In addition,
Defendant has not agreed to withdraw its specific objections to Ms. Berrios' discovery requests.
Instead of complying with its discovery requirements under Fed. R. Civ. P. Rule 33 and 34, or
seeking to work with Ms. Berrios on dates for the depositions, Defendant has spent its time filing
affirmative motions seeking a Protective Order (Docket # 53) from the depositions and for
Partial Judgment on the Pleadings (Docket # 56).

## **PROOF AT TRIAL**

The Defendant improperly withholds its answers to interrogatories and has refused to
produce requested documents based on general and amorphous objections including that the
discovery sought is not relevant, is unduly burdensome or is protected by a privilege, though not
described in its privilege log. (Def.'s Objs. To Pl.'s First Interrogs. & Request for Prod. Docs.,
ex. A).   The Plaintiff has a Motion for Partial Summary Judgment currently pending that

establishes one of the necessary elements of the claim: the fact that the Defendant reported inaccurate derogatory information about the Plaintiff. (Docket # 40).

There are four primary issues that are to be litigated: (1.) Accuracy – whether the disputed information reported by Flagstar to the CRAs was accurate and complete; (2.) Liability – whether Wachovia violated the FCRA, 15 U.S.C. 1681s-2(b) by the manner in which it conducted the required investigations or responded back to the CRAs after each dispute; (3.) Willfulness (Recklessness) – whether Flagstar intended its conduct or recklessly permitted the conduct; and (4.) Damages – once liability is established, determining the Plaintiff's unliquidated and liquidated actual damages and if the violation was also willful, this includes the appropriate amount of punitive damages. The answers to interrogatories and production of documents that have been withheld from Plaintiff's discovery focuses on liability, willfulness and punitive damages. Counsel have met and conferred on several occasions and there remains a large divide.

## A.    LIABILITY EVIDENCE

The liability issues in this case focus on these claims: whether (1) the derogatory information reported by Flagstar to the CRAs was accurate; (2) whether Flagstar's Automated Consumer Dispute Verification (ACDV) investigations were reasonable; and (3) whether Flagstar provided incomplete and inaccurate responses back to the credit bureaus after Ms. Berrios made the ACDV disputes.

### 1.    Documents and Interrogatory responses required to present this evidence:

While the Defendant has obstructed the Plaintiff's legitimate discovery, Plaintiff has nonetheless narrowed the areas of contention as a result of meeting and conferring. Thus, Plaintiff boiled down his outstanding discovery needs to the following: Interrogatories 8, 10, 14,

15, 16, 18 and Requests for Production 17.

**2.      At trial, Plaintiff intends to present evidence of liability:**

a.      Evidence or stipulation about how Ms. Berrios had a loan modification that Flagstar did not honor.

b.      Evidence regarding Flagstar's substantive investigation of ACDV disputes when received.  This will examine (a.) the actual procedures established for the ACDV investigators, (b.) testimony from the actual employees about what was done in this case, and (c.) detailed examination of the documentary records about the Plaintiff's ACDV disputes.

c.      Evidence as to whether those procedures were reasonable.  Some of the evidence of reasonableness considered in other court decisions includes:

(i) The cost and time the furnisher spent on each dispute to determine whether the investigation was adequate. *Cushman v. Trans Union*, 115 F.3d 220 (3rd Cir. 1997) ("TUC's investigations are performed by clerks paid $7.50 per hour and who are expected to perform ten investigations per hour. […] [T]he jury could have concluded that seventy-five cents per investigation was too little to spend when weighed against Cushman's damages."); *DiPrinzio v. MBNA America Bank*, N.A., 2005 WL 2039175, *10 (E.D.Pa. 2005) ("[A] jury exposed to information regarding the average processing time could improperly believe that MBNA's investigations of the particular disputes relating to plaintiff were conducted in the same amount of time. […] [T]he information is directly relevant under 15 U.S.C. § 1681s-2(b)(1), which states that a creditor must conduct a investigation of a consumer's disputes.").

(ii) The defendant's supervision and oversight of the investigations as proof of reasonableness. *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) (applying conventional agency principals to FCRA impermissible pull case); *Dennis*

10

*v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir 2008) (Experian unreasonably relied on third party

vendor to perform its investigation of public records inaccuracy); and "[a]n employer is liable for

negligence in failing properly to instruct employees, or failing to assure that the instructions are

obeyed."  30 C.J.S. Employer—Employee § 205.

## B.  EVIDENCE OF WILLFULNESS

In addition to the evidence to be presented to meet the negligence threshold, Plaintiff also

will present evidence that Flagstar's procedures were deliberately or recklessly adopted and

followed despite established law barring such procedures and conduct.   The Plaintiff has

requested, but the Defendant has not produced, the documents related to Flagstar's procedures

for complying with the FCRA, including:

- Knowledge of governing legal requirements;
- Previous lawsuits that provided notice;
- Changes made to comply with the law;
- Internal reviews and discussions of investigation procedures;
- Email communications regarding FCRA compliant investigation procedures;
- Any documents discussing identity theft or familial/friendly fraud.

All of this information is discoverable as it can establish for the jury Flagstar's

willfulness under *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007); *see also Levine v. World*

*Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).   In *Levine*, the Eleventh Circuit

actually just restated the Supreme Court's *Safeco* standard.  *Id*.  It has been held that the *Safeco*

standard actually reduces the Plaintiff's willfulness burden:

> *Safeco* changed the standard previously applied in the Fifth Circuit, pursuant to
> which a defendant could have been found in willful noncompliance under § 1692n
> only if it " 'knowingly and intentionally committed an act in conscious disregard
> for the rights of others.' " *Stevenson v. TRW Inc.,* 987 F.2d 288, 293-94 (5th
> Cir.1993) (quoting *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), cert.
> denied, 483 U.S. 1022 (1987)); *see also Harris v. Equifax Info. Servs., LLC,* No.
> C A 606CV-01810-GRA, 2007 WL 1862826, at *2 (D.S.C. June 26, 2007) ("In
> *Safeco*, the Supreme Court unequivocally resolved this circuit split, holding that

11

willfulness under 15 U.S.C. § 1681n(a) covers a violation committed in reckless disregard of Plaintiff's rights.").

*Robertson v. J.C. Penney Co., Inc.*, No. 2:06CV3-KS-MTP, 2008 WL 623397, at *9 (S.D. Miss. Mar. 4, 2008). While in many circuits, the courts had previously required "knowing or conscious disregard," *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001), or even "willful concealment," *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001), the post-*Safeco* standard included "recklessness." *Levine*, 554 F.3d at 1318. Plaintiff is entitled to evidence that establishes Flagstar's level of recklessness or willfulness in its disregard of Plaintiff's rights under the FCRA.

### C. FLAGSTAR'S BOILERPLATE OBJECTIONS ARE IMPROPER.

#### 1. Flagstar's "Relevancy" Objections should be Stricken.

Throughout its written objections and the meet and confer process, Flagstar has taken the position that the information or documents sought by the Plaintiff "are not relevant." It seeks to withhold from discovery information and documents it unilaterally deems irrelevant with respect to Interrogatories 7, 12, 14, 15, 17, 18, 19, and 20, as well as requests for production 2, 7, 8, 10, 14, 17, 19, 20, 21, 24, and 25. In the meet and confer process, Plaintiff's counsel has argued that a Defendant's opinion about the relevancy of a discovery request is not the proper basis for an objection or for withholding documents and information. *Capetta v. GC Servs. Ltd. P'ship*, 3:08CV288, 2008 WL 5377934, at * 2 (E.D.Va. Dec. 24, 2008). To be relevant, the information sought need not be admissible at trial, but must be broadly construed and is discoverable if it appears reasonably calculated to lead to discovery of admissible evidence, and can include "'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 353 (1978).

While Plaintiff very much believes that the discovery sought is relevant, it is inarguable that it is at least "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26.

Under Rule 26, Plaintiff may discover any materials that are not privileged if the materials requested are reasonably calculated to lead to admissible evidence.   Rule 26 is very broad, permitting a wide range of inquiry at the pre-trial stage. The legal standard for over 65 years has been that if there is any possibility that the information sought may be relevant, the court should permit the discovery. *Hickman vs. Taylor*, 329 U.S. 495 (1947).  The policy underlying this rule is to promote fair litigation through mutual knowledge of relevant facts. Therefore, the rule is to be liberally interpreted in favor of granting discovery. *Hickman*, 329 U.S. at 597.  Recognizing this general policy of free and open discovery, the scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). There is complete accord among the United States courts that discovery should be extremely broad. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984); *Herbert v. Lando*, 441 U.S. 153 (1979); *Hickman v. Taylor*, 329 U.S. 495 (1947).

In order to defeat the broad scope of the liberal discovery rules, it is the Defendant's burden to show specifically how each interrogatory is not relevant.  *Capetta*, 2008 WL 5377934, at * 2 (quoting *Roesburg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296 (E.D.Pa. 1980).  In this case, the Defendant has completely failed to articulate with specificity how the discovery Plaintiff seeks is not relevant to the FCRA claims. In fact, the objections Defendant pasted nearly the same exact phrases:  "Flagstar objects to this Interrogatory as it is… not reasonably calculated to lead to the discovery of admissible evidence" and/or "Flagstar objects… because it seeks information not relevant to this litigation." Such a form objection without any supporting specificity is

inadequate under the Rules, which must be "plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable." *Capetta*, 2008 WL 5377934, at * 3 (quoting *Panola v. Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985))(internal quotations omitted).   General or improper objections such as the objections by Flagstar in this case are justifiable cause for the court to deem any objections to be waived. *Id.* (citing cases).   Despite repeated meet and confers among counsel, Flagstar has not supplied a single specific reason why Plaintiff's interrogatories or requests for production are irrelevant and thus the objections should be deemed to be waived.

## 2.    Defendant has failed to show that discovery is overbroad and unduly burdensome

To carry its burden of demonstrating a successful objection to a discovery request, an objecting party may not simply intone the familiar "overly broad, burdensome, oppressive and irrelevant" litany.   *Capetta*, 2008 WL 5377934, at * 3.   The Defendant has pasted similar objections in response to Interrogatories 3, 4, 5, 6, 8, 9, 10, 12, 14, 15, 16, 19, 21, and 22 and Requests for Production 2, 3, 4, 10, 11, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, and 25.   The mere statement by a party that a discovery request is burdensome is not adequate to voice a successful objection to discovery. *Id.*, (*citing Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)). The objecting party must demonstrate specifically how, given the liberal construction afforded the federal discovery rules, the discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.   *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. PA. 1980).   *See also Burns v. Image Films Entertainment*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996); *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332

(Kan. 1991); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 353 (N.J. 1990); *G-69 v. Degnan*, 130 F.R.D. 326, 331 (D.N.J.1990); *Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C. 1978).   The objection must show with specificity how the discovery request is overly broad, burdensome, or oppressive and submit affidavits in support or offer evidence which reveals the nature of the burden. *Chubb Integrated Sys. Ltd. v. National Bank of Wash.*, 103 F.R.D. 52, 59-60 (D.C. 1984); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42-43 (S.D.N.Y. 1984); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979); *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332 (D. Kan. 1991). *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa.) ("The onus is therefore on the party objecting to discovery to state the grounds for the objection 'with specificity.' Rule 33(b)(4).   Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice.")   Without a clear showing that the request is truly "overly" burdensome, the objection should not be allowed to stand. The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden.   *Fagan v. District of Columbia*, 136 F.R.D. 5, 7 (D.D.C. 1991); *see also*, *Luey v. Sterling Drug, Inc.*, 240 F. Supp. 632, 634-35 (W.D. Mich. 1965); *United States v. Nysco Labs.*, 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960).

In this case, none of the objections are accompanied by a longer self-serving non-specific sentence claiming that, for instance, in interrogatory number 17 the request would require identification of all lawsuits brought under § 1681s-2 as well as an individual review of all litigation involving the same claims. Instead, Flagstar provided no affidavit or explanation as to

why any particular objection was over broad or burdensome. During the parties meet and confer on February 16, 2012, counsel for Flagstar's sole justification for the blanket responses was that those questions did not have a scope in relation to time. Even though Ms. Berrios' counsel was willing to stipulate to a timeframe, Flagstar's counsel refused to withdrawal these objections. Instead, Flagstar's counsel requested Plaintiff to resubmit her discovery requests despite its blatant misuse of objections.

This method of answering interrogatories and requests for production is the same method that the Court prohibited in *Cappetta*. 2008 WL 5377934, at * 3-4. In that case, the Court found that "merely stating that a discovery request is 'over broad' or 'unduly burdensome' will not suffice to state a proper objection. *Id*. at 3. Like the defendant in *Cappetta*, Flagstar has not produced a single fact demonstrating that any request visits an undue burden on or is so overbroad that it does not relate to the Plaintiff's claims. *Id*. at 4. Thus, Flagstar's overbroad and unduly burdensome objections should not be able to stand.

### 3.     Work Product or Attorney-Client Privilege

Defendant also makes blanket objections based on work product or privilege in Interrogatories 1 and 9 and Requests for Production 3, 4, 6, and 13. The standard for asserting privilege is the same in discovery as in Fed. R. Evid. 1101(c).  *Id*. (*citing U.S. v. Reynolds,* 345 U.S. 1 (1953).  In this case, the Defendant has supplied substantially the same, non-specific sentence as an objection based on privilege instead of carrying its burden to "'supply opposing counsel with sufficient information to assess the applicability of the privilege or protection.'"  *Id*. (*quoting Burns v. Imagine Films Entertainment, Inc*. 164 F.R.D. 589, 593 (W.D.N.Y. 1996)). Here, Flag Star has not distinguished among the discovery requested to demonstrate which is work-product and which is privileged. (Attached as ex. B). Defendant has not described in any

detail the nature of the documents not produced in response to discovery "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id*. Although Flagstar has supplied a privilege log, it doesn't include any of the discovery for which it now claims is privileged in response to discovery. For instance, Requests for Production 3 asks Flagstar to produce correspondence between it and any of the co-defendants in this case, which regard the subject of this lawsuit. Flagstar objected to this Request based on privilege, but no such communication is listed in its privilege log. Similarly, Flagstar employed the same objection when asked for communications between it and Ms. Berrios in Request for Production 4. Once again, Flagstar failed to altogether identify any communications between it and Ms. Berrios in its privilege log.

A privilege log should contain a summary of the contents of the document, the date the document was created, the person (s) who created it, the person(s) to whom it was directed or for whom it was created, the purpose, the privileges asserted within the document, and how each element of the privilege is met as to each particular document. *See Burns*, 164 F.R.D. at 594.

Because the privilege and work product objections are in and of themselves insufficient and also because they lack the specificity of an adequate privilege log, the court should deem the objections to be waived. *Eureka Fin Corp. v. Hartford Ace. & Indem. Co*., 136 F.R.D. 179, 184 (E.D. Cal. 1991).

### 4.    Defendant's reference to documents in its interrogatory response is improper

Defendant misuses the Federal Rule of Civil Procedure 33(d)'s option to produce business records in a number of ways. Fed. R. Civ. P. 33 (c). First, subdivision (d) does not allow a respondent to refer to a mass of records. See Fed. R. Civ. Pro 33 advisory committee's note (stating "The Committee is advised that parties upon whom interrogatories are served have

occasionally responded by directing the interrogating party to a mass of business records….
[s]uch practices are an abuse of the option). The express language of the rule requires that the
specification "shall be in sufficient detail to permit the interrogating party to locate and to
identify… the records from which the answer may be ascertained." *Id. See, e.g., Taube Corp,
Inc. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 455 (W.D.N.C. 1991).

In violation of this rule, Defendant refers Ms. Berrios to 315 pages of documents in
response to Interrogatories 1, 7, 10, and 14. Instead of specifying which document contains the
answer, Defendant shifts its burden to Ms. Berrios to scan 315 pages of information to determine
answers to her interrogatories. For example, Interrogatory 7 asks Defendant to "state and
describe each and every change which you have instituted or made to your procedures and
policies for investigation of consumer disputes…." Defendant responded that such an answer
may be determined by examining its business records "namely, the credit policies and training
manuals being produced by Flagstar in this action at Bates Nos. FSB 000598-913...." A cursory
review of the documents referenced in Flagstar's response to Interrogatory 7 reveals that most of
the 315 pages are not responsive. For example, Bates Nos. 000611-613 discuss the roles and
responsibilities of agencies in credit report; Bates Nos. 000614-626 refer to the industry standard
and guidelines for reporting certain types of accounts; Bates Nos. 000627-647 explains the Metro
2 Format and record layouts; and Bates Nos. 000648-696 explains filed definitions and record
identifiers.

None of these documents describe the changes that Flagstar has instituted to its
procedures and policies for investigation of consumer disputes. Yet, Flagstar directs Ms. Berrios
to review these documents in lieu of providing a response. This is a blatant disregard of the
express language of Rule 33(d) and the policy behind it as outlined in the Advisory Committee

Notes.  Accordingly, Ms. Berrios requests the Court to enter an Order requiring Flagstar to provide substantive responses to Interrogatories 1, 7, 10 and 14.  *See Ayers v. Continental Casualty Co.*, 240 F.R.D. 216, 227 (finding plaintiff's use of Rule 33(d) insufficient and ordering substantive answers to be produced).

### D.      PLAINTIFF'S DISCOVERY REQUESTS ARE PROPER

Plaintiff previously narrowed her discovery requests to remove any that are controversial, unnecessary or untested.  Plaintiff has now narrowed the discovery sought even more.  Nearly every Interrogatory or Request for Production herein prosecuted has been the subject of comparable discovery or trial motions in this District.  Plaintiff asks the Court to Order production or, when appropriate, exclusion of the information and comments sought in the following requests.

The Defendant has failed to comply with the requirements of Fed. R. Civ. P. 33 and 34 in responding to the Plaintiff's discovery.  The Defendant's objections and lack of privilege log are completely inadequate under the Federal Rules and the rulings of this court.  Defendant has improperly withheld discoverable information that Plaintiff needs to prepare for the deposition of party witnesses and the corporate designee as well as to prepare for trial.   The Plaintiff seeks the Court's order deeming the Defendant's objections to be waived and ordering production of the discovery under Fed. R. Civ. P. 37(a) outlined herein.   Otherwise, the Plaintiff seeks the sanctions permitted under Fed. R. Civ. P. 37(c)(1).

### 1.      *Related Requests for Production 19*

*RFP 19:  Produce your annual report issued for the fiscal or calendar years 2008, 2009 and 2010.  (In lieu of producing such documents, you may produce a written stipulation of the amount of your net worth as of January 1, 2011).*

Defendant's response to this request was that "subject to and without waiver of Flagstar's general and Specific Objections, Flagstar will produce its loan file for the Plaintiff's loan." The "specific" objection is that the request was overbroad, and not reasonably calculated to lead to admissible evidence. However, Plaintiff has alleged a punitive damages claim under the FCRA. 15 U.S.C. §1681n.  Defendant's net worth is directly relevant to this claim and is discoverable. *Capetta*, 2008 WL 5377934, at *6 (*citing Lucas v. GC Servs.*, 226 F.R.D. 328, 334 (N.D. Ill. 2004), explaining that the court had admonished Defendants they could not rest on their objection and had to produce evidence of net worth).  This information is necessary to determine a proper amount of punitive damages.  In fact, in a very recent FCRA case, litigated under the same statutory section as in the present case, the Fourth Circuit stated:

> We also conclude that a smaller award would not "serve as a meaningful deterrent" to BB & T. *Kemp,* 393 F.3d at 1365. As the court noted in *Bach*, "a punitive damages award must remain of sufficient size to achieve the twin purposes of punishment and deterrence." 486 F.3d at 155 (quotations and citations omitted). This is not to say that a $400,000 punitive damages award would be appropriate in this case, as it was in *Bach.* But reducing the punitive damages award of $80,000 here would leave little deterrent or punitive effect, particularly given BB & T's net worth of $3.2 billion. *See, e.g., TXO Prod. Corp. v. Alliance Res. Corp.,* 509 U.S. 443, 462 n. 28 (1993) (plurality opinion) (noting that it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages")

*Saunders v. Branch Banking & Trust Co. of Va.,* 526 F.3d 142, 154-155 (4th Cir. 2008). In addition to the *Saunders* case, evidence of net worth and financial information has been permitted in every FCRA trial in this District.

### Interrogatories 9 & 17; Request For Production 17:

*Interrogatory 9: Identify each fact witness or expert witness you believe may have knowledge of any of the facts, events, or matters that are alleged in plaintiffs complaint, you answer, anticipated answer and/or defense thereto an/or may have formed any opinion or consulted with you about the facts or basis of this lawsuit, or any defense or allegation you have raised in this lawsuit.  For each such person identified, please list each and every lawsuit in which that person has testified by affidavit, deposition, trial testimony, or by report furnished to the court or*

*opposing counsel. Please explain and describe the nature of each such statement by the person so identified. Please identify the lawsuit by complete caption, court name, cause number, and date the affidavit, deposition, trial testimony, or report was made, taken, or occurred.*

*Interrogatory 17: Identify every lawsuit in which you have been sued for your alleged violation of 15 U.S.C. § 1681s-2. Include the style of the case, the names of all co-defendants, the court in which the action was brought, the case number, the name of the plaintiff's attorney, the identities of any of your co-defendants, the date the case was filed, and the disposition in the case. If it was settled, state the terms of the settlement.*

*RFP 17: Produce for each fact witness or expert witness you believe may have knowledge of any of the facts, events, or matters that are alleged in Plaintiff's complaint, your answer, anticipated answer and/or defenses thereto and/or may have formed any opinion or consulted with you about the facts or basis of this lawsuit or any defense or allegation you have raised in this lawsuit, produce a copy of any affidavit, deposition, transcript, or report which contains the testimony or opinions of such witness and which has been previously furnished to the court or opposing counsel in such case.*

The Plaintiff has pled and seeks to prove that Flagstar's violations of the FCRA were willful. The Fourth Circuit has held relevant to a willfulness determination the question of whether or not there is "evidence that other consumers have lodged complaints similar to" the plaintiff in this case. *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).

The same evidence was ordered produced in this District by Judge Payne in *Faile v. Equifax Info. Servs., LLC, (3:06cv617)* and by Magistrate Judge Dohnal in two FCRA cases, *Dorsey v. Sallie Mae, et al.,* (3:05cv337) (against Select Portfolio Servicing) and *Alabran v. Capital One Bank,* (3:05cv935). Not only is evidence of prior complaints relevant to the question of willfulness under 15 U.S.C. §1681n, it is also relevant to the question of notice for simple negligence. In another Eastern District of Virginia case, *Grizzard v. Sallie Mae*, (3:04 CV 625), Judge Williams considered a *Motion in Limine* to exclude such evidence at trial. The Court denied this motion, explaining:

> The defendants' motion in limine to exclude testimony and evidence regarding other litigation is denied in part and granted in part. The Court will limit such testimony and evidence regarding other litigation. I will not permit unfettered use of evidence from any other cases as that would complicate the trial and confuse the jury. However, some

21

evidence, such as the complaint and the Fourth Circuit's opinion in the *Johnson* case, and other evidence that would be relevant to the issue of the defendants' actual notice that their procedures were unreasonable or violated the Fair Credit Reporting Act will be relevant to show notice, knowledge, or willfulness and will not be excluded.

In *Mullins v. TransUnion*, (3:05cv888), Judge Payne considered an almost identical argument (though in a different posture) that now presents itself in this case.   At the Final Pre-trial Conference, the FCRA Defendant, TransUnion, sought to prevent the consumer's use of previous lawsuits and court decisions criticizing that Defendant's investigation procedures. Judge Payne rejected such an attempt and in doing so provided a concise and complete explanation of the purpose of such evidence:

> THE COURT:  All right.  I think the information that Trans Union got a message from a court that told it its investigative procedures were inadequate is relevant.  I don't think it's prejudicial because it is notice that the investigative procedures were relevant. […]
> THE COURT:  Cushman says you can't parrot information given you by the bank.
> MR. LUCKMAN:  Under some circumstances.
> THE COURT:  Period.  That's it.
> MR. LUCKMAN:  It says "under some circumstances."
> THE COURT:  Look, it's time that you-all came to realize that <u>when a Court tells you something, you have got to realize it, accept it, and do something about it.  If you don't, you're in trouble.  It's time that your client understood that, and that's what he's trying to prove.  And if you don't do it, you get punished for doing it. That's just the way life is.</u>

In *Mullins* and *Williams*, the Court was considering whether evidence of prior complaints and decisions was relevant and thus admissible. In this case, the court is faced with an even easier question – whether such information is discoverable.  Because the information would be relevant at trial, it is discoverable now.  Because the Defendant has failed to demonstrate with any specificity why it is privileged, work product, overly broad, irrelevant or not likely to lead to the discovery of admissible evidence, the Defendant must be compelled to produce the requested evidence.

**Interrogatory 13:**

*Interrogatory 13:  State the factual basis of any and all defenses that you have asserted to the Plaintiff's Complaint.   For each paragraph of Plaintiff's Complaint for which you deny the allegations, please explain and describe any facts that you believe may support each denial.   If you contend as one of your defenses that, as of the date of each ACDV received by you, the Plaintiff was delinquent in the payment of her mortgage loan, state every single reason and fact and identify every single document that supports your contention.*

In one of the few actual responses, the Defendant has provided, they answer:

*"Prior litigation between the Plaintiff and Flagstar was resolved via a settlement that involved a loan modification. There was an inadvertent error in boarding Plaintiff's loan modification, which resulted in confusion concerning how Plaintiff's account was serviced and how her payments were processed, and, ultimately, the status of how Plaintiff's account was serviced and how her payments were processed, and ultimately, the status of Plaintiff's account. Any investigations of the issue would have shown a delinquency because of the boarding problem. Flagstar did not deliberately or willfully do or fail to do anything that resulted in harm to the Plaintiff. Further, Flagstar has reason to believe that Plaintiff was not as forthcoming with complete information as she might have been in resolving this issue and that, at least partially as a result of the same, the issue was not resolved as quickly as it otherwise might have been."*

In their Supplemental Responses, Defendant provided additional responses to this Interrogatory, but still provides no factual basis for their position. An example would be the affirmative defense of unclean hands or estoppel. There is no factual basis to support this contention. The responses go on to direct Ms. Berrios to the documents to ascertain the Defendant's contention:

*"Flagstar further states that the answer to this interrogatory may be determined by examining of summarizing a party's business records, namely the credit reporting filed produced by codefendants in this action and the servicing notes produced by Flagstar, and the burden of deriving or ascertaining the answer will be substantially the same for Plaintiff as for Flagstar."*

In Defendant's Answer to the Amended Complaint, they deny numerous factual allegations and assert twelve affirmative defenses. The Defendant did not provide a specific objection to this Interrogatory, and thus, to the extent that the Defendant denies any other

allegation of the Complaint, the Plaintiff is entitled to learn the facts that support its denials defenses.

Defendant makes only acknowledges that they had computer issues in applying the modification, but otherwise seeks to shift the burden to the Plaintiff to attempt to ascertain the basis for its denials and affirmative defenses.  Pursuant to Fed. R. Civ. P. 37(c)(1), it should not now be permitted to use evidence not disclosed in a timely manner.  Its defense should be stricken.  While Plaintiff must still prove his case, Defendant should not be permitted to put on evidence of its own.

<strong>CONCLUSION</strong>

The Plaintiff has endeavored to narrow the areas of disagreement but now finds it necessary to move for a court order because discovery will close on March 6, 2012.  It is for the reasons outlined in this memorandum that the Plaintiff seeks an Order compelling the Defendants answers to interrogatories and production of the documents requested.

Respectfully submitted,


**SANDRA J. BERRIOS,**


_____/s/_____
Susan Rotkis, Esq. VSB #40639
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com

Kristi Cahoon Kelly, VSB #72791
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400

(703) 591-9285
E-mail:  kkelly@siplfirm.com

Leonard A. Bennett, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed in the CM/ECF system, which shall electronically forward it to the following on this the 16th day of February, 2012, as follows:

George Kostel, Esq., VSB #34757
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., NW, Suite 900
Washington, DC 20001
Tel: (202) 712-2800
Fax: (202) 712-2860
Email: George.Kostel@nelsonmullins.com

*Attorney Flagstar Bank, FSB*

_____/s/_____
Susan Rotkis, Esq. VSB #40639
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com